# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| **RAINBOW ENERGY MARKETING CORPORATION,** | § | |
| *Plaintiff/Counter-Defendant* | § | **Case No. 1:21-cv-313-RP** |
| | § | |
| **v.** | § | |
| | § | |
| **DCT, LLC,** | § | |
| *Defendant/Counter-Plaintiff* | § | |

## ORDER AND REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO: THE HONORABLE ROBERT PITMAN**
**UNITED STATES DISTRICT JUDGE**

Before the Court are DC Transco LLC's Opposed Motion for Leave to File First Amended Counterclaim, filed November 12, 2021 (Dkt. 55); DC Transco LLC's Second Motion for Partial Judgment on the Pleadings, filed December 1, 2021 (Dkt. 60); DC Transco LLC's Motion to Compel Discovery Responses, filed May 19, 2022 (Dkt. 74); and the associated response and reply briefs.[1] The District Court referred the motions to the undersigned Magistrate Judge for disposition and Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1), Federal Rule of Civil Procedure 72, and Rule 1 of Appendix C of the Local Rules of the United States District Court for the Western District of Texas ("Local Rules").

---

[1] The parties have filed the majority of their briefs and pleadings under seal. They also have filed redacted public versions of those documents. The Court quotes no sealed documents in this Order and Report and Recommendation, which therefore need not be sealed. The Court reminds the parties that: "Generally, the public has a right to inspect judicial records." *United States v. Texas*, 566 F. Supp. 3d 605, 619 (W.D. Tex.), *cert. granted before judgment*, 142 S. Ct. 14 (2021) (citing *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)); *see also Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 418 (5th Cir. 2021) ("The public's right of access to judicial proceedings is fundamental."); *U.S. v. Holy Land Found. for Relief & Dev.*, 624 F.3d 685, 690 (5th Cir. 2010) (explaining the "strong presumption that all trial proceedings should be subject to scrutiny by the public") (citation omitted).

## I.    General Background

This litigation arises from Winter Storm Uri, which devastated the state of Texas in February 2021 with days of freezing rain, snow, and below-freezing temperatures. Jess Donald, *Winter Storm Uri 2021: The Economic Impact of the Storm*, Texas Comptroller's Fiscal Notes (October 2021).[2] Nearly seventy percent of Texans lost power in catastrophic blackouts spanning most of the state during the storm, which contributed to at least 210 deaths and caused financial losses estimated at $80 billion to $130 billion. *Id.*

The Texas electrical power generation and distribution grid is operated by the Electric Reliability Council of Texas ("ERCOT"). First Amended Complaint, Dkt. 42 ¶ 7. Rainbow Energy Marketing Corporation ("Rainbow"), a North Dakota corporation with its principal place of business in Bismarck, North Dakota, is a marketer and trader of electric power and provides energy management services to utility companies. *Id.* ¶ 2. DC Transco, LLC ("DCT"), a New York limited liability company, is in the business of selling electricity into the Texas electric power grid operated by ERCOT. *Id.* ¶ 3.

Texas's electric grid, unlike other states' grids, is largely internal and avoids connections to interstate systems. *Id.* ¶ 7. But a limited number of tie lines do permit power to flow into Texas's grid. *Id.* ¶ 9. The ERCOT East DC Tie is one such line, connecting the Texas grid with the electricity grid operated by the Southwest Power Pool ("SPP"), which permits transmission of electricity from parts of 13 other states. *Id.* ¶ 10. DCT owns the right to transmit 50 MW of electricity per hour to ERCOT via the East DC Tie based on a transmission capacity agreement with SPP. *Id.* ¶ 13.

---

[2] Available at https://comptroller.texas.gov/economy/fiscal-notes/2021/oct/winter-storm-impact.php. The Court takes judicial notice of this report. *See Coleman v. Dretke*, 409 F.3d 665, 667 (5th Cir. 2005) (taking judicial notice of Texas agency's website); *Cicalese v. Univ. of Texas Med. Branch*, 456 F. Supp. 3d 859, 871 (S.D. Tex. 2020) ("[G]overnmental websites are proper sources for judicial notice.").

On June 25, 2014, Rainbow and DCT executed an Energy Management Agreement (the "EMA")[3] in which Rainbow agreed to provide DCT with "energy management services, including selling electricity into the ERCOT market and purchasing power from other parts of the country to satisfy the ERCOT sales." Defendant's Answer and Counterclaim, Dkt. 20-1 ¶ 64. DCT alleges that Rainbow's role under the EMA was to enter into "Commodity Transactions" and "Other Transactions," as those terms are defined in the EMA, to maximize profits for DC Transco. Dkt. 63 at 1. DCT further alleges that the EMA required DC Transco's advance approval of "all transactions . . . and limited Rainbow's power to act as DC Transco's agent or to create any obligation on behalf of DC Transco." *Id.* In contrast, Rainbow alleges that since 2019, "DCT has afforded Rainbow total discretion over transactions undertaken on behalf of DCT with third parties with terms of 30 days or less for the purchase or sale of power and/or risk management or financial transactions." Dkt. 42 ¶ 17.

Beginning February 10, 2021, as Winter Storm Uri was moving toward Texas, Rainbow, "anticipating a rise in electricity prices in ERCOT" due to the storm, entered into a series of transactions "on behalf of DCT" to lock in the sale price for electricity for the following week and weekend (the "Disputed Transactions"). Dkt. 42 ¶ 18-21. Rainbow contends that these transactions were not Commodity Transactions or Other Transactions under the EMA. Rainbow alleges that it informed DCT of the Disputed Transactions on Friday, February 12, 2021, and DCT raised no objections. *Id.* ¶ 27. Rainbow contends that the Disputed Transactions could have been "unwound" or "booked out" until 5 p.m. on February 12. *Id.* ¶ 23. Rainbow further alleges that the Disputed Transactions resulted in over $16 million in profit for DCT from February 12 to February 19, 2021. *Id.* ¶ 44. "Because several counterparties defaulted on their payment obligations, all of which were

---

[3] Dkt. 1-1 (Sealed).

to be made through ERCOT, ERCOT remitted a total of $11.64 million to Rainbow on behalf of DCT. Rainbow deducted its management fee pursuant to the EMA and paid $10.87 million to DCT." *Id.* ¶ 45.

DCT contends that Rainbow should not have locked in pricing for the weekend of February 13-14 and the following week of February 15-19, 2021. DCT argues that Rainbow should have sold all 50 MW of electricity DCT had the right to flow across ERCOT East DC Tie in the Day Ahead or Real Time markets, which ultimately hit the ERCOT cap of $9000 per MW hour. Dkt. 20-1 ¶ 69. DCT characterizes the Disputed Transactions as "a series of risky, financially-settled futures contracts on the ICE Futures U.S. commodity exchange ('ICE') for the following week, which created the risk of losing money for the forecasted period of the storm." *Id.* ¶ 66. DCT alleges that Rainbow did not get DCT's prior approval to enter into the Disputed Transactions, although Rainbow was contractually obligated to do so under the EMA. *Id.* DCT further argues that the Disputed Transactions were unrelated to the activity of the DC Tie or buying or selling power, but that Rainbow attempted to assign these trades to DC Transco after they had become significant liabilities. *Id.* DCT contends that it 'would not have approved any ICE trades for relatively low prices for electricity as the impending winter storm created an expectation that prices would increase rapidly." *Id.* ¶ 67. DCT further alleges that by the end of the storm, Rainbow allocated approximately $21 million in losses to DC Transco, based on the Disputed Transactions, while keeping at least $35 million profit (from ICE trades not assigned to DCT) for itself. *Id.* ¶ 69.

Rainbow filed this action on April 9, 2021, seeking a declaratory judgment that (1) Rainbow is not obligated to pay any further sums to DCT in connection with the transmissions at issue; (2) the transactions undertaken by Rainbow on behalf of DCT were all approved; (3) Rainbow "has comported in all respects" with the EMA; and (4) DCT may not use *post facto* knowledge of

4

prices in the Texas electricity market to demand profits from transactions that were not undertaken, but might have been undertaken had the parties foreseen future events. Dkt. 19-1 ¶ 1.

In response, DCT filed counterclaims against Rainbow for breach of contract and breach of the implied covenant of good faith and fair dealing. Dkt. 20-1. DCT also seeks a declaratory judgment that Rainbow breached the EMA and that it is not responsible for the Disputed Transactions.

On August 12, 2021, DCT filed its First Motion for Partial Judgment on the Pleadings. Dkt. 35. Rainbow then filed an Opposed Motion for Leave to File Amended Complaint, which the District Court granted on August 27, 2021. On October 12, 2021, the District Court dismissed as moot DCT's first motion for partial judgment on the pleadings.

In its Second Motion for Partial Judgment on the Pleadings, DCT seeks judgment on one of its breach of contract counterclaims. DCT also requests leave to file its First Amended Counterclaim, adding new breach of contract claims against Rainbow. In addition, DCT moves to compel Rainbow to respond to certain discovery requests. Rainbow opposes all three motions.

## II.   Motion for Leave to File Amended Counterclaim

Federal Rule of Civil Procedure 15(a) permits a party to amend its pleading "once as a matter of course" within certain time periods after service, but afterward "only with the opposing party's written consent or the court's leave." The court should freely give leave when justice so requires. FED. R. CIV. P. 15(a)(2).

Rule 15(a) "evinces a bias in favor of granting leave to amend." *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (citation omitted). "Leave to amend is in no way automatic, but the district court must possess a 'substantial reason' to deny a party's request for leave to amend." *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (citation omitted). Leave to amend may be denied for "undue delay, bad faith or

dilatory motive on the part of the movant, repeated failures to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . .  and futility of the amendment." *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 477 (5th Cir. 2018) (quoting *Marucci*, 751 F.3d at 378). Absent a substantial reason, "the discretion of the district court is not broad enough to permit denial." *Mayeaux*, 376 F.3d at 425 (citation omitted). But denying a motion to amend is not an abuse of discretion if amendment would be futile. An amendment is futile if it would fail to survive a Rule 12(b)(6) motion. *N. Cypress Med. Ctr.*, 898 F.3d at 478.

DCT contends that it learned of additional breaches of the EMA by Rainbow after it filed its Original Answer and Counterclaim. DCT seeks leave to add two breach of contract counterclaims against Rainbow relating to its audit and record keeping obligations under the EMA. Rainbow argues that any amendment would be futile because DCT's allegations are false.

That Rainbow disputes DCT's allegations does not mean that the amendment is futile. An amended complaint is futile only if it "would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000). "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief." *Id.*

The EMA provides that New York law governs. Dkt. 1-1 at 50. Under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages. *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 750 (S.D.N.Y. 2017).

DCT's First Amended Counterclaim alleges sufficient facts to support each of these elements. DCT thus has alleged a plausible breach of contract claim, which is all that is required. Therefore, the Court **GRANTS** DCT's Motion for Leave to File First Amended Counterclaim (Dkt. 55).

### III.    Motion to Compel

DCT asks the Court to compel Rainbow to produce documents showing (1) the terms of the trades with the counterparties; (2) that the transactions were (or were intended to be) entered into on DCT's "behalf"; (3) when Rainbow decided to allocate the trades to DCT's account, and how and when it documented that allocation; (4) what other trades Rainbow entered on its own behalf or for other clients in the relevant markets February 10-19, 2021; and (5) why Rainbow did not report the trades to DCT until days later. Dkt. 79 at 2. In addition, DCT seeks internal emails, instant messages, and recorded telephone calls for February 2021. *Id.*

### A.  Legal Standards

Federal Rule of Civil Procedure 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The scope of discovery is broad. *Crosby v. La. Health Serv. & Indem. Co.*, 647 F.3d 258, 262 (5th Cir. 2011). "A discovery request is relevant when the request seeks admissible evidence or 'is reasonably calculated to lead to the discovery of admissible evidence.'" *Id.* (quoting *Wiwa v. Royal Dutch Petrol*. Co., 392 F.3d 812, 820 (5th Cir. 2004)).

After a party has attempted in good faith to obtain discovery without court action, that party may move for an order compelling disclosure or discovery. FED. R. CIV. P. 37(a)(1). The party resisting discovery must show how each discovery request is not relevant or otherwise objectionable. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990). "The Court must balance the need for discovery by the requesting party and the relevance of the discovery to the case against the harm, prejudice, or burden to the other party." *Cmedia, LLC v. LifeKey Healthcare, LLC*, 216 F.R.D. 387, 389 (N.D. Tex. 2003). "A trial court enjoys

wide discretion in determining the scope and effect of discovery." *Sanders v. Shell Oil Co.*, 678 F.2d 614, 618 (5th Cir. 1982).

## B.  Analysis

Rainbow first argues that the Motion to Compel should be denied because DCT failed to comply with the meet and confer requirement of Local Rule CV-7(g). DCT submitted evidence that the parties conferred by telephone and Teams on November 2 and 3, 2021, and by email on April 12 and May 4, 2022. Dkts. 74-6, 77-1, 77-2, 77-4.[4] On the facts presented, the Court finds that DCT complied sufficiently with Local Rule CV-7(g). Rainbow next argues that DCT's Motion to Compel is moot because Rainbow produced some of the requested documents after DCT filed its motion, but DCT replies that Rainbow has not produced all documents requested. Dkt. 81 at 1. Accordingly, the dispute is not moot.

After balancing DCT's need for the discovery, the relevance of the discovery, and the burden to Rainbow, the Court **GRANTS IN PART** and **DENIES IN PART** DCT's Motion to Compel (Dkt. 74). The Court **GRANTS** the Motion to Compel Rainbow to provide DCT with the requested documents concerning DCT, but **DENIES** the Motion as to documents exchanged between Rainbow and third parties not involving DCT or the Disputed Transactions.

## IV.    Motion for Partial Judgment on the Pleadings

Finally, DCT seeks judgment on the pleadings under Rule 12(c) on its counterclaim that Rainbow breached the EMA by entering into the Disputed Transactions without first receiving DCT's approval. DCT also seeks judgment on its claim for declaratory relief and Rainbow's crossclaim for declaratory relief regarding breach of the EMA.

---

[4] Each of these documents is filed under seal, although the latter three at least clearly contain no confidential material.

Rainbow argues that the motion should be denied because "[t]he question to be decided on a Rule 12(c) motion is not who will ultimately prevail in the lawsuit, but 'whether, in the light most favorable to the plaintiff, the complaint stats a valid claim for relief.'" Dkt. 68 at 1 (quoting *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002)). Rainbow argues that numerous material fact issues are in dispute, precluding judgment on the pleadings. The Court agrees.

## A. Legal Standards

### 1. Rule 12(c)

Rule 12(c) provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." A Rule 12(c) motion "is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust*, 313 F.3d at 312.

The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim. *Templeton v. Jarmillo*, 28 F.4th 618, 621 (5th Cir. 2022). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The court accepts the "well-pleaded facts as true," and views "them in the light most favorable to the plaintiff." *Terry Black's Barbecue, L.L.C. v. State Auto. Mut. Ins. Co.*, 22 F.4th 450, 454 (5th Cir. 2022). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of facts or any possible theory that he could prove consistent with the

allegations in the complaint." *Great Plains Trust*, 313 F.3d at 312. In determining whether a claim survives a Rule 12(c) motion to dismiss, the factual information to which the court addresses its inquiry generally is limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### 2. Breach of Contract

The interpretation of a contract is a legal question, and federal courts sitting in diversity apply state substantive law. *McBeth v. Carpenter*, 565 F.3d 171, 176 (5th Cir. 2009). As stated above, under New York law, a breach of contract claim requires (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of the contract by the defendant, and (4) damages. *Sackin*, 278 F. Supp. 3d at 750.

### B. Analysis

DCT argues that Rainbow breached Section 3.1(d) of the EMA by failing to notify DCT and receive approval before entering into the Disputed Transactions on its behalf, as required by that provision. Dkt. 63 at 9.

Rainbow does not dispute that it did not receive DCT's approval before entering into the Disputed Transactions. Dkt. 24 ¶ 15. Rainbow argues, however, that it did not breach the EMA because the Disputed Transactions do not fall within the EMA's definitions of "Other Transactions" or "Commodity Transactions." Rainbow argues that Section 3.1(d) of the EMA applies only to transactions between it and DCT, not to transactions between Rainbow and third parties on DCT's behalf. Dkt. 68 at 5. Rainbow contends DCT's prior approval was not required for the Disputed Transactions because none were between Rainbow and DCT; instead, all were between Rainbow and third parties. Rainbow also argues that DCT afforded Rainbow "total

discretion" over transactions undertaken on DCT's behalf with third parties with terms of 30 days or less for the purchase or sale of power and/or risk management of financial transactions. *Id.* at 3.

In reply, DCT does not attempt to argue that the Disputed Transactions fall within the definitions of Commodity Transactions or Other Transactions. Instead, DCT contends that "Rainbow has not identified any term in the EMA that permits it to enter a transaction without [DCT's] approval and assign it to [DCT]." Dkt. 69 at 5. But it is DCT's burden—not Rainbow's—to establish that it is entitled to judgment on the pleadings under Rule 12(c) with regard to its breach of contract counterclaim. *Great Plains Trust Co.*, 313 F.3d at 312. DCT further argues that other provisions of the EMA contradict Rainbow's interpretation. Dkt. 69 at 5. These provisions, however, do not conclusively establish that Rainbow violated the EMA. Rainbow and DCT interpret the EMA differently.

DCT has failed to demonstrate at the pleading stage that the EMA is unambiguous and should be interpreted in its favor. Moreover, numerous fact issues regarding Rainbow's obligations under the EMA are in dispute. "A motion for judgment on the pleadings, like a motion for summary judgment, should be granted only if there is no issue of material fact and if the pleadings show that the moving party is entitled to prevail as a matter of law." *Greenberg v. Gen. Mills Fun Grp., Inc.*, 478 F.2d 254, 256 (5th Cir. 1973).

DCT has failed to establish that Rainbow "would not be entitled to relief under any set of facts or any possible theory that [it] could prove consistent with the allegations in the complaint." *Great Plains Trust Co.*, 313 F.3d at 312. Accordingly, the Court recommends that DCT's Second Motion for Partial Judgment on the Pleadings should be denied.

## V.    Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** DC Transco's Second Motion for Partial Judgment on the Pleadings (Dkt. 60).

## VI.    Order

DC Transco's Opposed Motion for Leave to File First Amended Counterclaim (Dkt. 55) is **GRANTED**. DC Transco's Motion to Compel Discovery Responses (Dkt. 74) is **GRANTED IN PART** and **DENIED IN PART**, as detailed above.

It is **ORDERED** that the Clerk **REMOVE** this case from the Magistrate Court's docket and **RETURN** it to the docket of the Honorable Robert Pitman.

## VII.    Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on June 17, 2022.

SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE